**SO ORDERED.**

**SIGNED this 22nd day of October, 2021.**



*Dale L. Somers*
Dale L. Somers
United States Chief Bankruptcy Judge

Designated for print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

David L. Mongeau                    Case No. 21-40055
Jennifer L. Mongeau,                Chapter 12

              Debtors.

## Memorandum Opinion
## Denying American AgCredit's Motion to Dismiss

Unsecured creditor American AgCredit ("AgCredit") moves to dismiss

this Chapter 12 case,[1] contending that Debtors David and Jennifer Mongeau[2]

are not eligible for Chapter 12 relief because when they filed their petition

they were not "engaged in a farming operation," as required by the definition

---

[1] Doc. 51. AgCredit appears by W. Thomas Gilman.

of "family farmer" in 11 U.S.C. § 101(18).[3] Debtors acknowledge that they ceased growing crops and liquidated most of their farming assets in late 2020, before filing their Chapter 12 petition in early 2021. They contend they are nevertheless eligible to file under Chapter 12 because some of their farming related financial affairs were not resolved on the filing date and are being administered during the Chapter 12 case, they are still minimally involved in cattle operations and have some equipment, and because they intend to return to farming by raising livestock.

Trial was held on August 11, 2021. After considering Debtors' testimony, the parties' briefs, and the arguments of counsel, the Court finds Debtors met their burden of proof to show they are family farmers as defined by the Bankruptcy Code. The Court denies the motion to dismiss.

---

[2] Debtors appear by Tom R. Barnes, II.
[3] All future references to Title 11 in the text shall be to the section number only. This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion to dismiss for a debtor's lack of eligibility to file under a particular chapter of Title 11 is a matter concerning administration of the estate and a core proceeding which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

## I. Findings of Fact

Debtors reside in Holcomb, Kansas. David has always maintained off-farm employment in banking. He has been employed as a bank loan officer at his current bank for the last four years and worked for several other large farm lending institutions prior to that, with his main focus being agricultural lending. Jennifer is an accountant who has operated her own CPA firm for several years and works with a lot of farmers, and prior to that worked in other CPA firms.

There is no doubt Debtors consider themselves to be farmers. Both David and Jennifer were raised on farms, both sets of their parents continue to operate large family farms, and their siblings operate farms. Debtors themselves ran their own farm through an entity called Mongeau Enterprises, LLC, owned 50% by David and 50% by Jennifer. It is undisputed that Debtors ran a large farming operation in the years leading up to their Chapter 12 petition: Debtors raised corn, wheat, milo, and soybeans on owned and leased acres, and at one point had over a thousand head of cattle. In each calendar year 2018, 2019, and 2020, Debtors had income of more than $1 million dollars.

At some point, farming for Debtors became unprofitable. Throughout 2020, Debtors undertook an orderly liquidation of their farm assets. By December 31, 2020, all crop and livestock activities in Debtors' (or their LLC's) name had ceased, land leases were terminated, grain was sold and the proceeds paid to creditors, and substantially all equipment was sold at auction or turned over to creditors. Much of Debtors' real property and equipment was purchased by family members for its use in the family's farms. Many of their leases were taken over by family members.

About one month later, on February 1, 2021, Debtors filed a Chapter 12 bankruptcy petition. Debtors' schedules show real property of $267,000 (Debtors' residence); total personal property of approximately $1,220,000, comprised primarily of exempt financial assets; secured liabilities of approximately $78,000; and unsecured liabilities of approximately $6,000,000, comprised primarily of agricultural debt.

It is undisputed that on the petition date, neither Debtors nor their LLC owned any growing crops, stored crops, chemicals, or tractors. Debtors owned one Deere Flex King Blade Plow, which was being held in anticipation of being picked up by the secured creditor John Deere Financial. Debtors also owned one pickup that Debtors use when working on their family's farms. (Debtors drive separate/different vehicles to commute to work.) And Debtors'

4

minor daughter owns cattle that the family runs with Jennifer's brother's cattle. Finally, Jennifer's brother purchased some cattle equipment, and the family consider Debtors part-owners of that equipment because of the sweat equity Debtors put into making the equipment usable.

Debtors regularly assist on their family's farms. Jennifer helps with David's family farm's paperwork. Jennifer gets paid for doing that farm's taxes each year, but then also provides unpaid assistance with other paperwork. Both Debtors help with manual labor, both on their parents' farms and on Jennifer's brother's farm. Debtors assist with cattle on Jennifer's brother's farm because, as mentioned, they keep their daughter's cattle with his herd.

In addition to their physical presence on their family's farms, Debtors both testified that they are active in wrapping up their LLC's farm operation. There are a handful of items that have come in as 2021 income, stemming from 2020 activities, that have required post-petition work on the business-side of farming. David testified that he does this work from his home in Holcomb, as he has always done. Post-petition, Debtors have received and distributed the following: (1) a USDA payment of $128,829.93, which on April 7, 2021, was distributed to creditors; (2) an AgCredit patronage dividend of $6,942.70, which was set off after AgCredit obtained relief from stay; (3) an

5

FSA payment of $5623 relating to livestock; (4) a USDA payment of $831 under the 2013 Livestock Forage Disaster program; and (5) a cooperative patronage refund of $249.29 for year 2020. In addition, Mongeau Enterprises, LLC, Debtors, and others are defendants in litigation brought by First National Bank of Syracuse pending in the District Court of Rooks County, Kansas, and there have been at least some hearings in that case concerning the distribution of certain funds held in trust by the bank that stem from the sale of equipment and crops. And finally, Jennifer testified concerning some farm expenses for custom cutting work that they are still paying and other general clean up to do. David testified that he has "spent a lot of time" on the clean-up work for Debtors' farming operation post-petition: keeping track of income, getting assets and government payments collected, and communicating with creditors.

Debtors testified at length about their plans to return to farming, but on a smaller scale. Debtors do not plan to raise crops, due to a prior default in crop insurance premiums, meaning Debtors would be unable to obtain crop insurance. But Debtors want to start a livestock operation. Debtors testified they have family members with storage facilities that they would be permitted to use to store grain for feeding cattle. Jennifer's uncle has also expressed his desire that Debtors get into a cattle business with him, and

Jennifer also testified about her hope they could get into her brother's cattle operation as they already provide labor for him. Jennifer unequivocally testified that yes, Debtors plan to start a new farming operation, but on a smaller scale, and that Debtors did not intend to abandon farming as they hope to purchase cattle and start anew. Jennifer testified that in her opinion, they are part of their family's farms, because they provide labor in an effort to keep income within the family, in hope to preserve the family farms to pass down to generations. David also testified that his intent is to farm, and to do something with livestock because they could become involved with family member's operations and that is where they would find family help.

## II. Conclusions of Law

Under § 1208(c), the Court may dismiss a Chapter 12 case for "cause." Debtors bear the burden of proof to show eligibility for relief under Chapter 12.[4] To make the determination of whether Debtors are eligible for Chapter

---

[4] *In re Woods*, 743 F.3d 689, 705 (10th Cir. 2014) ("Debtors had the burden of establishing their eligibility for Chapter 12 relief."); *In re Ollis*, 609 B.R. 459, 464 (Bankr. D.S.C. 2019) ("A debtor who files a Chapter 12 petition bears the ultimate burden of proving eligibility for relief under that chapter."); *In re Rosenberger*, No. 20-50093, 2020 WL 6940926, at *3 (Bankr. W.D. Va. Sept. 29, 2020) ("The debtor bears the burden of proving her eligibility for relief under a certain chapter of bankruptcy. . . . She must put forward sufficient evidence to allow the Court to find that she satisfies the section 109(f) eligibility requirements, including the definitional section 101(18) requirement that she was 'engaged in' a farming operation at the time of filing.").

12, the Court focuses on the statute's structure, and the plain meaning of the words used in the Code.[5]

Chapter 12 was enacted because the other Chapters of the Code did not "provide effective reorganization relief to the majority of family farmers."[6] The Code provides, "[o]nly a family farmer . . . with regular annual income may be a debtor under chapter 12" of Title 11.[7] The phrase "family farmer" is then defined to mean an "individual or individual and spouse engaged in a farming operation" whose aggregate debt and gross income satisfy statutory requirements.[8] In this case, the challenge to eligibility is limited to whether Debtors satisfy the "engaged in a farming operation" portion of the definition of "family farmer." The Code indicates the phrase "'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."[9] The word "farming" is not itself defined.

---

[5] *In re Woods*, 743 F.3d at 694.

[6] 7 William L. Norton, Jr. and William R. Norton III, *Norton Bankruptcy Law & Practice 3d* § 122:2 (Thompson Reuters 2021).

[7] 11 U.S.C. § 109(f).

[8] 11 U.S.C. § 101(18)(A). AgCredit does not challenge whether Debtors meet those income requirements.

[9] 11 U.S.C. § 101(21). "The definition of 'farming operation' does not provide an exclusive list of all farming activities and is not limited to the specific activities delineated in the statute." *In re Sharp*, 361 B.R. 559, 564 (10th BAP Cir. 2007).

8

Case law establishes the test for Chapter 12 eligibility is determined at the time the case is filed.[10] There are two elements to determining if a debtor is "engaged in a farming operation:" a temporal element (the debtor must be engaged in a farming operation on the date of filing); and a substantive element (whether the debtor's activities on that date constituted a farming operation).[11] Whether Debtors were "engaged in" a farming operation on the petition date and whether a particular activity constitutes a "farming operation" are determined on a case-by-case basis considering the totality of the circumstances.[12]

Both parties rely on an Eleventh Circuit Court of Appeals decision, *In re Watford*,[13] to flesh out the definition of family farmer. The Watfords grew soybeans through 1985, then in 1986 they ceased cultivation of their land and stored the beans on their land and began conducting a stone crabbing operation in the Gulf of Mexico. They filed for relief under Chapter 12 in 1987. At an initial hearing, Mr. Watford testified he had plans to use his land to develop fish ponds for recreational use, but at the final hearing testified that he would also harvest fish from the ponds. The bankruptcy court

---

[10] *Watford v. Fed. Home Loan Bank of Columbia (In re Watford)*, 898 F.2d 1525, 1527 (11th Cir. 1990).
[11] *In re Rosenberger*, 2020 WL 6940926, at *2.
[12] *Id.* at *2-3; *In re Maike*, 77 B.R. 832, 836 (Bankr. D. Kan. 1987) (describing the "totality of the circumstances" test).

9

dismissed the case, finding the Watfords were not engaged in a farming operation on the date of filing.

On appeal, the district court affirmed, but the court of appeals affirmed in part, vacated in part, and remanded. The appellate court affirmed that stone crabbing did not constitute a farming operation but reversed the dismissal, because it concluded that the lower courts applied an incorrect legal standard with regard to the Watfords' storage of soybeans and planning for commercial fish ponds. The Eleventh Circuit held that "a farmer who harvested soybeans in 1985, ceased actively tilling of the soil, but continues to plan the reorganization of his farming operation (though the development of fish ponds) could depending on the circumstances be 'engaged in a farming operation.'"[14] The appellate court remanded "for a determination of whether the Watfords had abandoned all farming operations at the time of filing, or whether under the totality of the circumstances the Watfords had not abandoned all farming operations, but rather were planning to continue farming operations in the form of commercial fish ponds or otherwise."[15] The standard adopted by the Eleventh Circuit is "whether, in view of the totality of the circumstances, the debtor intends to continue to engage in a 'farming

---

[13] 898 F.2d 1525.
[14] *Id.* at 1528.
[15] *Id.* at 1529.

10

operation' even though he or she was not engaged in the physical activity of farming at the time the petition was filed."[16]

Making this determination is, of course, the difficult part. The term "engaged" is defined as "involved in activity: occupied, busy."[17] When determining the temporal element, whether debtors were "engaged in" farming on the date of filing, one court has found relevant factors are: (1) "the debtor's daily involvement on the farm, (2) the debtor's legal ownership interest in the farming operation and /or its assets, and (3) the debtor's physical presence on the farm."[18] As to whether a particular business constitutes a farming operation, there is no widely accepted list; the factors courts have considered vary based upon the circumstances presented.[19]

---

[16] *Id.* The majority of cases have adopted the Eleventh Circuit's totality of the circumstances approach, contrasted to a more restrictive standard from the Seventh Circuit, articulated in *In re Armstrong*, 812 F.2d 1024, 1027 (7th Cir. 1987), that interprets § 101(18) to apply only to farmers whose activities are "exposed to the inherent risks and cyclical uncertainties traditionally associated with farming."
[17] *See* "engaged," Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/engaged (last visited September 28, 2021).
[18] *In re Rosenberger*, 2020 WL 6940926, at *3.
[19] *E.g.*, compare *In re McLawchlin*, 511 B.R. 422, 428 (Bankr. S.D. Tex. 2014 (identifying the following factors: (i) whether the location of the operation would be considered a traditional farm, such as a rural area, (ii) the nature of the enterprise at the location, such as whether a service or product is being provided, (iii) the type of product and its eventual market, such as whether it is traditionally agricultural though this is not strictly limiting, (iv) the physical presence of family members on the farm, (v) ownership of traditional farm assets, (vi) whether the debtor is involved in the process of growing or developing crops or livestock, and (vii) perhaps the key factor being whether or not the practice or operation is subject to the inherent risks of farming) with *In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285

11

Debtors and AgCredit each present lists of factors which courts generally consider when determining whether debtors are "engaged" in a "farming operation" and therefor eligible for Chapter 12 relief. The two lists have several factors in common. The common factors are whether: (1) the debtors had abandoned all farming operations at the time of filing, (2) there is a plan or intent to continue farming operations in some form, (3) the abandonment of farming was a shift to a different type of farming, and (4) debtors own farm assets such as equipment. The additional factors enumerated by Debtors include consideration of whether the activities are subject to the cyclical risks involved in farming. The Court finds the four factors listed by both parties, plus the additional factor of risk identified by the Debtors, are appropriate for consideration under the circumstances of this case.

Applying these factors, AgCredit argues Debtors had ceased all farming operations, had no plans to resume either growing crops or raising livestock, had not shifted to a different type of farming, had no farm assets, such as equipment and chemicals, and the winding up of financial affairs which

_____

(Bankr. D. Or. 1987) ("whether there is a physical presence of family members on the farm, whether the debtor owns traditional 'farm assets,' whether leasing land is a form of scaling down of previous farm operations, what the form of any lease arrangement is and whether the debtor entity had, as of the date of filing, permanently ceased all of its own investment of assets and labor to produce crops or

12

remained to be completed did not expose Debtors to any of the inherent risks of farming. Debtors see the facts differently of course. Debtors acknowledge they had ceased actively tilling the ground and raising crops, but argue they are still engaged in farming because they are winding up the affairs of their LLC postpetition, maintain active connections to farming, and because they fully intend to begin a new livestock operation once the wind-up of their former operation is complete.

The Court concludes that whether the plain meaning of "engaged" is used or the totality of the circumstances test is used, Debtors were engaged in a farming operation at the time of filing their Chapter 12 petition.

First, Debtors had not completely abandoned all farming operations at the time of filing. Debtors were "engaged"—they are very involved in their extended family's farms, Debtors' daughter has cattle that the family runs with other cattle owned by extended family, and Debtors help work those cattle. Debtors partially own cattle equipment that they have worked postpetition to make usable in a future livestock operation. To be engaged in a faming operation, a debtor need not "only use assets belonging to them."[20]

---

livestock").

[20] *In re Howard*, 212 B.R. 864, 873 (Bankr. E.D. Tenn. 1997).

And ownership in farm equipment based on a joint venture understanding with a non-debtor can be sufficient.[21]

Yes, Debtors had ceased growing crops and had sold the majority of their equipment prior to filing. But there is a business management side to farming that cannot be overlooked. Of course, the word farming brings to mind working the ground or raising animals. But modern farming is much more: analyzing government programs; analyzing crop insurance; analyzing the various markets; determining land values; identifying and adapting the appropriate technology; proper nutrition for livestock; determining soil conditions; balancing environmental issues; determining proper veterinarian procedures for livestock; complicated reporting to various government agencies; maintaining books, creditor-relations; addressing the tax implications of farming—all constitute just a partial list. All these aspects of farming are important and managing the business elements of a farm are just as much farming as plowing the ground.[22] David testified that he spent a lot of time winding up the remaining financial affairs related to Debtors' farming operations. The evidence establishes Debtors received and distributed

_____

[21] *See In re Rosenberger*, 2020 WL 6940926, at *3 (noting the debtor testified as to "the existence of an understanding" between herself and another person concerning a joint venture in a farming operation).
[22] *See, e.g., id.* (describing the debtor's "involvement on the business-management side of the operation," including maintaining books and preparing tax returns).

14

significant income from their 2020 farming activities. Income from farming does not solely consist of payments for farm outputs from a grain buyer or a cattle barn. Modern farming depends and relies on intricate relationships with large creditors and federal and state governments. Receipt, accounting, and distribution of this income is part of modern farming. AgCredit argues that any bookkeeper could do the same. But that is not the question. The question is whether handling the business of farming is part of being a farmer. The answer is: of course it is. Thus, when the Court looks to see if a debtor is engaged in a farming operation, it is looking at the totality of circumstances for the debtor's eligibility, and this business side should not be overlooked.

Second, there is an intent to continue farming operations in the future, and Debtors' termination of their prior farm operation is part of a shift to a smaller scale cattle operation. Debtors finished liquidating their large-scale farm operation at the end of 2020. They filed their bankruptcy petition just over a month later, on February 1, 2021. Debtors repeatedly testified about their involvement in their extended family's farm operations, and their desire and intent to leverage that involvement into a cattle operation of their own. Debtors currently run their daughter's cattle with Jennifer's brother's cattle operation and have already started building back their equipment through

their joint venture with their brother on the cattle equipment. The Court recognizes that a debtor cannot rely on the farming activity of others to satisfy a court that the debtor is eligible for Chapter 12 relief,[23] but that is not all that is happening here. The Court relays the facts concerning Debtors' active participation in their family's farms to indicate the likelihood and concreteness of the plans to resume farming. Debtors do not have much now, but they have lots of family help and involvement. After listening to the testimony of Debtors, the Court readily concludes Debtors intend to continue farming in the future and the liquidation of their LLC was part of a shift to a smaller scale farm endeavor.

Third, Debtors do own some farm assets. Debtors have a pickup they use to physically assist in their family's farm operations. Again, Debtors are just starting the process of building back their cattle equipment. Debtors have always managed the business side of their farm operations out of their home in Holton. At filing Debtors still had possession of the Deere Flex King Blade Plow. Debtors are also defendants in pending litigation concerning the distribution of funds that arose from their sale of equipment and crops.

---

[23] *See, e.g.*, *In re Buckingham*, 197 B.R. 97, 103 (Bankr. D. Mont. 1996) ("the activity must not only be a farming activity, but it must also be one related to the debtor's own farming operation and not just the farming operations of others" (internal quotation omitted)).

16

Finally, the risk factor should not be discounted. Debtors are not currently growing crops. They are not currently raising a large herd of cattle. As a result, they do not have the risks associated with those farming activities. But they are winding up the results of the risks previously taken. And the definition of "farming operation" is "to be construed liberally in order to further Congress' purpose of helping family farmers to continue farming."[24]

The Court recognizes Debtors were not actively engaged in working land or cattle on the petition date on a *large* scale. Debtors candidly testified that they liquidated their large farming operation in order to complete a structured wind-down. To be sure, ownership of farm assets and the risk associated thereon are important factors in determining who is a "family farmer." But under the Bankruptcy Code, a Chapter 12 debtor is entitled to completely liquidate a farming operation under § 1222(b)(8).[25] This Code provision "reflects a recognition by Congress that many family farm reorganizations, to be successful would involve the scaling down of the farm operation."[26] "It would make little sense to block a debtor from the relief

---

[24] *In re Watford*, 898 F.2d at 1527.

[25] Under § 1222(b)(8) a Chapter 12 plan may "provide for the sale of all or any part of the property of the estate or the distribution of all or any part of the property of the estate among those having an interest in such property."

[26] *In re Williams*, No. 15-11023, 2016 WL 1644189, at *3 (Bankr. W.D. Ky. Apr. 22, 2016); *see also In re Mikkelsen Farms, Inc.*, 74 B.R. 280, 285-86 (Bankr. D. Or. 1987) ("The provisions of § 1222(b)(8) permit a Chapter 12 plan of complete liquidation. If

17

provided by Congress under Chapter 12 simply because Debtors made a reasonable financial decision to end a nonprofitable farming operation which would cause the Debtors to fall deeper into debt. This seems to be contrary to the goal of a Chapter 12."[27] The Court rejects the contention that the fact Debtors undertook an orderly liquidation process prepetition compels the conclusion that they are no longer "engaged in a farming operation." Shifts in farming, even dramatic ones, are anticipated by the Code.[28] Remember, a "farming operation" is defined by the Code to simply include "farming," and as this Court has repeatedly stressed, there is much more to farming than planting a seed.

The Court concludes, weighing the factors set out above applied to the facts and circumstances of this case, Debtors meet the definition of family farmer in the Code. Debtors are eligible for relief because they were "engaged

---

a farm were liquidated there would be no income from farm operations to fund the plan if needed. An interpretation of § 101(18) to require annual income to be only from farm operations could, on occasion, deny a debtor the right, which it would otherwise have, to liquidate pursuant to § 1222(b)(8). . . . Thus, I find that a family farmer who otherwise qualifies under § 101(17) may be a family farmer with regular income within the meaning of § 101(18) if it can show it will have regular annual income, from whatever source, that is sufficiently stable and regular to fund the plan.").

[27] *In re Williams*, 2016 WL 1644189, at *3.

[28] *Id.* ("The court's reading of the statutory definitions and case law bearing on eligibility, however, confirms that Congress anticipated such changes and sought to permit those engaged in farming to continue the agricultural lifestyle, even in the face of interruptions and dramatic shifts, as the Debtor's case illustrates.").

18

in a farming operation" on the date they filed for relief under Chapter 12. The Court analogizes this situation to cases under Subchapter V of Chapter 11. A debtor is eligible for relief under Subchapter V if the debtor satisfies the eligibility requirements of § 1182(1)(A). Included in those eligibility requirements is that the debtor be "engaged in a commercial or business activity." Similar to the issue herein, courts have struggled with what it means to be "engaged in" a business activity. Some courts have concluded that winding down a business that stopped operating prepetition is sufficient to be "engaged" in business activities.[29] This Court finds those cases

---

[29] *E.g.*, *In re Vertical Mac Constr., LLC*, No. 6:21-bk-01520-LVV, 2021 WL 3668037, at *3 (Bankr. M.D. Fla. July 23, 2021) (concluding that maintenance of bank accounts, working with insurance adjusters and defense counsel to resolve claims, engaging in efforts to sell assets qualify as engagement in commercial or business activities); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 237 (Bankr. S.D. Tex. 2021) (concluding that actively pursuing litigation against a third party and other wind down work all qualified as "engaged in commercial or business activities"); *In re Offer Space, LLC*, 629 B.R. 299, 306 (Bankr. D. Utah 2021) (concluding that wind down activities of exploring counterclaims in a lawsuit and "taking reasonable steps to pay its creditors and realize value for its assets" was active engagement in a commercial or business activity"); *In re Ikalowych*, 629 B.R. 261, 284 (Bankr. D. Colo. 2021) (concluding that performing wind down work of about twelve hours a month postpetition such as storing business records and dealing with tax accountants and tax issues qualified as engaged in commercial or business activities); *In re Blanchard*, No. 19-12440, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020) (concluding a debtor's engagement in commercial or business activities could be currently engaged in or formerly engaged in); *In re Wright*, No. 20-01035-HB, 2020 WL 2193240, at *3 (Bankr. D.S.C. Apr. 27, 2020) (concluding that "addressing residual business debt" was engaging in business activities); *cf. In re Johnson*, No. 19-42063-ELM, 2021 WL 825156, at *7 (Bankr. N.D. Tex. Mar. 1, 2021) (concluding the debtors were not "engaged in commercial or business activities" because they were not occupied or busy in defunct companies

19

persuasive. No matter what farming used to be, today farming is a business.[30] The wind down work for farming is no different than the wind down work for other businesses.

## III.  Conclusion

For the foregoing reasons, the Court concludes Debtors have met their burden of proof to show they are eligible for Chapter 12 relief. The Court denies AgCredit's motion to dismiss.

The Court does not mean to imply that the way Debtors and their counsel did things in this case are the way they should be done from a timing standpoint. The Court is only stating that Debtors have carried their burden based on the unique and individual facts of this case. Counsel for Chapter 12 debtors should proceed with caution in this area in the future.

The foregoing constitutes Findings of Fact and Conclusions of Law

---

and there was no evidence the cessation was temporary in nature or evidence of an intent to resume operations); *In re Thurmon*, 625 B.R. 417, 420, 423 (Bankr. W.D. Mo. 2020) (debtors were not "engaged in commercial or business activities" because they had sold their business with no intent to return to it and were not active or involved in any business activities, although their LLC was still in good standing under state law and still owned some outstanding accounts receivables and two cars).

[30] The Court recognizes there may be some difference between being "engaged in" an "operation" versus "engaged in" a "commercial or business activity." *See In re Blue*, 630 B.R. 179, 190 (Bankr. M.D.N.C. 2021) (contrasting engagement in "operations" from engagement in "activities," and concluding even though the debtor had ceased business operations, it was engaged in business activities by maintaining bank accounts and winding down its business). But again, the modern

20

under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.

**Judgment**

Judgment is hereby entered denying AgCredit's motion to dismiss. The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**It is so ordered.**

<b>###</b>

---

definition of farming includes commercial and business "activities."

Case 21-40055    Doc# 107    Filed 10/22/21    Page 21 of 21